## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MELISSA ROBERTS-JEWETT,           )
                                   )
                    Plaintiff,     )
                                   )        CIVIL ACTION
v.                                 )
                                   )        No. 11-1066-JWL
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for SSI on November 7, 2007, alleging disability beginning November 7, 2007.[1]  (R. 8, 56, 57, 106-11).  The applications were denied initially and

---

[1]The application in the record is dated November 21, 2007, but the Administrative Law Judge found that Plaintiff applied on November 7, 2007 (R. 8), the Disability

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 8, 56-57, 71).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Edmund C. Werre on November 2, 2009.  (R. 21-54).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 8, 26-54).

ALJ Werre filed a decision on January 15, 2010 finding that Plaintiff has a severe combination of impairments that produces both physical and mental limitations which restrict Plaintiff's residual functional capacity (RFC) to perform less than the full range of light work.  (R. 8-15).  He found that Plaintiff has no past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the economy that Plaintiff can perform.  (R. 15-16).  Therefore, he found Plaintiff is not disabled within the meaning of the Act, and denied her application. (R. 16).  Plaintiff requested, but was denied Appeals Council review of the decision.  (R. 1-4).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

---

Determination Transmittals reflect a "filing date" of 11/07/2007 (R. 56-57), and the Commissioner's Brief asserts that Plaintiff's application was "protectively filed" on November 7, 2007.  (Comm'r Br. 1); see also, 20 C.F.R. § 416.325 (When an application is considered filed).  Therefore, the court accepts November 7, 2007 as the filing date.

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2011); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims error both in the ALJ's evaluation of the treating source opinion of Dr. Werder and in the ALJ's RFC assessment.  With regard to the RFC assessment, she argues the ALJ failed to provide a narrative discussion regarding the need for low stress work and the inability to have significant interaction with the general public and with co-workers, improperly relied upon a single global assessment of functioning (GAF) score,[2]

---

[2]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear

and improperly presumed that unskilled work is non-stressful.  The Commissioner

opposes each of Plaintiff's claims, arguing that the ALJ properly discounted Dr. Werder's

opinion, did not assess RFC based on a single GAF score, provided a proper narrative

discussion linking the RFC assessed to the record evidence, and did not presume that

unskilled work is non-stressful, but instructed the vocational expert to consider only jobs

that were low stress in nature.  In her Reply Brief, Plaintiff argues that "the

Commissioner does not refute plaintiff's argument that there is no such thing as a low

stress job" (Reply 1), and that the ALJ is not qualified to render a medical judgment

regarding Plaintiff's level of anxiety based on "his observations of plaintiff at a one-hour

hearing."  (Reply 2).  Recognizing that each of Plaintiff's allegations of error relates to an

aspect of the ALJ's RFC assessment, and seeking efficiency in its consideration, the court

will address the errors alleged by Plaintiff in a different order than that presented in

Plaintiff's brief, beginning with consideration of the ALJ's evaluation of the treating

source opinion of Dr. Werder.

## III.    Evaluation of the Treating Source Opinion of Dr. Werder

        Plaintiff argues that the reasons given for discounting Dr. Werder's opinion

regarding the severity of Plaintiff's anxiety are not supported by the record.  (Pl. Br. 10).

Specifically, she argues that the ALJ did not explain why he found Dr. Werder's

---

expectation of death).  Id. at 34.  GAF is a classification system providing objective
evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36
(D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

treatment notes do not substantiate his anxiety assessment; that although Plaintiff reported her anxiety comes and goes, she does not need to show she never had periods free from symptoms of mental impairment; that a treating physician's opinion regarding the mental condition of his patient may not be discounted on the grounds that the physician is not a psychiatrist; and that contrary to the ALJ's finding, other record evidence supports Dr. Werder's opinion. The Commissioner argues that the ALJ provided good reasons to discount Dr. Werder's opinion.

As Plaintiff suggests, Dr. Werder is an osteopathic physician who treated Plaintiff from January through April, 2009. (R. 327-39). Dr. Werder completed a Hamilton Anxiety Scale (HAM-A) rating of Plaintiff, finding that she has the highest severity level of anxiety on that scale--severe. (R. 329-30). Plaintiff quoted the ALJ's explanation why he accorded "little weight" to Dr. Werder's assessment of severe anxiety: because "[t]he doctor's treatment notes do not substantiate such limitations," because the Plaintiff "did not indicate this level of anxiety during her disability hearing," because Plaintiff reported to Dr. Werder that her anxiety comes and goes, and because "Dr. Werder's opinion . . . is not consistent with the other evidence of record." (Pl. Br. 9-10) (quoting (R. 15)).

Plaintiff first claims that the ALJ did not explain why he found Dr. Werder's treatment notes do not substantiate Dr. Werder's anxiety assessment. She points to Dr. Werder's diagnosis of generalized anxiety disorder (GAD); to notations indicating pressured and voluminous speech, little affect, expansiveness and anxiousness; and to notations indicating decreased anxiety, and "anxiety about the same." (Pl. Br. 10) (citing

(R. 327-37)).  Plaintiff's argument misses the significance of the ALJ's statement that

"[t]he doctors's treatment notes do not substantiate such limitations."  (R. 15).  The ALJ

acknowledged that Plaintiff suffers from anxiety, he found that Plaintiff has a severe

impairment of anxiety disorder.  (R. 10).  He noted that Plaintiff reported she does not

like being around people, and he accommodated her anxiety by limiting interaction with

the general public or co-workers.  (R. 13).  The ALJ does not suggest that Dr. Werder's

treatment notes do not reflect anxiety.  Rather, he said the treatment notes do not

substantiate such <u>severe</u> anxiety as suggested in Dr. Werder's HAM-A scale.  The ALJ

noted that Dr. Werder recorded that Plaintiff was "doing 'so-so' to pretty good," "that she

did not know what could be better," and that "she was doing 'all right.'"  (R. 14) (citing

Ex. 15F/ 2, 5, 7 (R. 328, 331, 333)).  He cited Dr. Werder's note on February 9, 2009 that

there was no worsening in Plaintiff's anxiety (R. 14); <u>see also</u> (R. 331), and Plaintiff's

hearing testimony that "she stopped attending these counseling sessions because the

psychologist was bringing up old issues and testified that it was a 'hassle.'" (R. 14).

There is no error in the ALJ's first reason for discounting Dr. Werder's opinion.

The second reason the ALJ gave to discount Dr. Werder's opinion was that

Plaintiff "did not indicate this level of anxiety during her disability hearing."  (R. 15).

For the first time, Plaintiff attacks this reason in her Reply Brief, arguing that "the ALJ is

certainly unqualified to render any medical judgments by his observations of plaintiff at a

one-hour hearing."  (Reply 2) (citing <u>Bolan v. Barnhart</u>, 212 F. Supp. 2d 1248, 1262 (D.

Kan. 2002) (ALJ is not to render a medical judgment)).  The court need not address an

8

issue raised for the first time in a reply brief.  Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).  It will not do so here.  Nevertheless, Plaintiff misunderstands the ALJ's finding.  The ALJ did not render a medical judgment about Plaintiff's anxiety at the hearing.  He did not say that Plaintiff did not appear to him to have severe anxiety.  Rather, he indicated that Plaintiff's hearing testimony did not suggest such severe anxiety as reflected in Dr. Werder's report.  Moreover, as discussed above, the ALJ accommodated Plaintiff's anxiety by restricting her from significant interaction with the general public or with co-workers.

The ALJ also discounted Dr. Werder's opinion because Plaintiff reported to Dr. Werder that her anxiety comes and goes, suggesting it is not as severe as Dr. Werder opined.  (R. 15).  Plaintiff claims this is error because a claimant does not have to show continuous mental impairment without symptom-free intervals.  (Pl. Br. 10).  Plaintiff is correct that mental impairments often wax and wane and that a claimant need not show that the impairment is continuously disabling in order to succeed in her claim of disability.  Freemyer v. Sullivan, 723 F. Supp. 1417, 1420 (D. Kan. 1989).  Here however, the ALJ was not relying upon the fact that Plaintiff's anxiety is occasionally not as severe as Dr. Werder opined.  Rather, as noted above, he was rely on Plaintiff's consistent reports to Dr. Werder that her anxiety is not as severe as Dr. Werder suggests.  As noted above, Plaintiff reported "doing 'so-so' to pretty good," "that she did not know what could be better," and that "she was doing 'all right.'"  (R. 14) (citing Ex. 15F/ 2, 5, 7 (R. 328, 331, 333)).  Moreover, as Plaintiff admits, she also told Dr. Werder that her

"[a]nxiety comes and goes."  (Pl. Br. 10) (quoting (R. 328)).  In context, it is not error for

the ALJ to discount Dr. Werder's opinion because Plaintiff told the physician that her

anxiety "comes and goes."

The court notes Plaintiff's argument that an ALJ may not discount the opinion of a

physician on the ground that he is not a psychiatrist.  (Pl. Br. 11); Smith v. Astrue, No.

08-1052-MLB, 2009 WL 1580311 at *8 (D. Kan. Jun. 4, 2009) (citing Lester v. Chater,

81 F.3d 821, 833 (9th Cir. 1995));   In the same paragraph, Plaintiff admits "the ALJ did

not use that as a reason to discount [Dr. Werder's] opinion."  Id.  As Plaintiff admits,

there was no error in this regard.

Finally, Plaintiff claims that the ALJ summarily concluded that Dr. Werder's

opinion is inconsistent with the other record evidence, and argues that this is error

because Dr. Burden also diagnosed Plaintiff with anxiety.  (Pl. Br. 11) (citing (R. 391-94,

397)).  Plaintiff argues that on all five occasions when Dr. Burden examined Plaintiff

between March 26, 2008 and August 31, 2009, he stated "patient mood is anxious with

nervous affect."  Id.  She points out that on one occasion Dr. Burden noted "increased

feelings of anxiety," id. (citing (R. 394)), and that on the "last two visits with Dr. Burden,

both in August 2009, the physician recorded, 'HAVING CONSIDERABLE BACK PAIN

AND ANXIETY,' (Tr. 391, 392) (original caps)."  (Pl. Br. 11).  Again, Plaintiff misses

that the ALJ acknowledged that Plaintiff has anxiety and assessed an RFC

accommodating that anxiety.  The ALJ did not state that no other medical source

diagnosed Plaintiff with anxiety.  He stated that "Dr. Werder's opinion [(that Plaintiff's

anxiety measures at the highest level of severity on the HAM-A scale)] . . . is not consistent with the other evidence of record."  (R. 15).

Plaintiff is correct that Dr. Burden diagnosed Plaintiff with anxiety, and noted an anxious mood with nervous affect as a finding on physical examination at each of five visits, March 26, 2008, June 8, 2009, July 6, 2009, August 3, 2009, and August 31, 2009. (R. 391-97).[3]  Dr. Burden also consistently noted Plaintiff's reports of pain--back pain, neck pain, and/or "sciatica"--on each of the visits.  Id.  However, Dr. Burden's notes do not indicate that Plaintiff's anxiety is as severe as suggested by Dr. Werder, and do not indicate that anxiety is the primary issue treated at any visit.  Id.  Although Dr. Burden recorded "considerable" anxiety at the August 2009 visits, his plan for treatment reveals only that he prescribed the medication Klonopin for anxiety.  (R. 391-94).  At one visit, Dr. Burden referred Plaintiff "to family life, extended counseling," but that was at the July 6, 2009 visit, the only visit where Plaintiff complained of depression with fatigue, and feeling sad and blue.  (R. 393).  There is no indication Plaintiff pursued counseling thereafter.  Beyond medications for pain, depression, and anxiety, the only aggressive treatment given by Dr. Burden was injections to Plaintiff's knees (R. 392, 397) and an MRI of her lumbar spine.  (R.395-96).

To the extent that Plaintiff may be implying that severe anxiety is suggested by Dr. Burden's use of capitalization in recording "considerable back pain and anxiety" at the

---

[3]On March 26, 2008, the treatment note is worded somewhat differently: "Anxious mood and affect."  (R. 397).

August 2009 visits, the court finds otherwise.  Dr. Burden apparently began using a different system for recording office notes between Plaintiff's March 2008 visit and her next visit, in June 2009.  Compare (R. 397) with (R. 391-94).  Large portions of Plaintiff's 2009 treatment notes are capitalized, and there does not seem to be any suggestion that the capitalized portions are more important or more severe than the non-capitalized portions.  (R. 391-94).  Finally, the references to "considerable back pain and anxiety" appear in the "ROS" (Report of Symptoms) section, and in each of the August 2009 treatment notes, that entire section is in all capital letters.  (R. 391-92).  The court finds no error in the ALJ's finding that Dr. Werder's opinion (that Plaintiff's anxiety measures at the highest level of severity) is not consistent with the other evidence of record.  While an adjudicator could find some support for Dr. Werder's opinion in Dr. Burden's treatment notes, the evidence does not require it.  Where the ALJ's finding is supported by substantial record evidence as it is here, the court will not substitute its judgment for that of the ALJ, even if it might have reached a different conclusion were it making the decision in the first instance.  Cowan v. Astrue, 552 F.3d 1182, 1184-85 (10th Cir. 2008) (citing Lax 489 F.3d at 1084).

**IV.    Additional RFC-Related Arguments**

Beyond her allegation that the ALJ improperly discounted Dr. Werder's treating source opinion, Plaintiff makes three other arguments related to the ALJ's RFC assessment.  She claims that the ALJ erroneously relied upon a single GAF score in Dr. McCleeary's Consultative Psychological Evaluation to support the mental limitations

assessed and that the ALJ erroneously presumed unskilled work is non-stressful although he did not indicate what stressors Plaintiff must avoid, and he should have presumed that Plaintiff must avoid all stress and is consequently unable to perform any work.  (Pl. Br. 4-7).  Finally, Plaintiff claims that the ALJ failed to provide a proper narrative discussion describing how the evidence supports the limitations to work that is low-stress in nature and to work that does not require significant interaction with others.  (Pl. Br. 7-8).

### A.     Relying on a Single GAF Score

Plaintiff claims it was error for the ALJ to rely upon the single GAF score of 55[4] drawn from Dr. McCleeary's consultative report, since the Commissioner has specifically refused to endorse GAF scores for use in Social Security disability programs, and especially where Dr. McCleeary had evaluated Plaintiff a year earlier and had assigned a GAF score of 50,[5] where the record contains other GAF scores ranging from 50 through 62,[6] and where the record contains no GAF scores assessed between March 2008 and the ALJ hearing in November, 2009.  The Commissioner agrees that a single GAF score is

---

[4]GAF scores in the range of 51-60 indicate "**Moderate symptoms** . . . **OR moderate difficulty in social, occupational, or school functioning.**"  DSM-IV-TR, at 34 (emphasis in original).

[5]GAF scores in the range of 41-50 indicate "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning**."  DSM-IV-TR, at 34 (emphasis in original).

[6]A GAF score in the range of 61-70 indicates "**Some mild symptoms** . . . **OR some difficulty in social, occupational, or school functioning** . . . **but generally functioning pretty well.**"  DSM-IV-TR, 34 (emphasis in original).

insufficient to support an RFC assessment.  (Comm'r Br. 12).  But, he points to other

bases for the ALJ's RFC assessment, including Dr. McCleeary's conclusion that Plaintiff

could likely perform unskilled work, Plaintiff's daily activities, Plaintiff's reports to Dr.

Werder, and the ALJ's finding that Plaintiff's allegations of disabling symptoms are not

credible.  Id. at 12-13.  Finally, the Commissioner points out that most of "the GAF

scores cited by Plaintiff indicated only moderate symptoms, consistent with the mental

limitations assessed by the ALJ."  Id. at 13.  The court agrees with the Commissioner.

      Plaintiff reads the decision both too broadly and too narrowly.  The portion of the

decision to which Plaintiff appears to address her argument states:

> With regard to the claimant's mental impairments, the claimant was
> diagnosed with anxiety, post-traumatic stress disorder and borderline
> personality disorder, and her global assessment of functioning (GAF) rating
> was 55 (Exhibit 9F [(R. 299-305)]).  According to the Diagnostic and
> Statistical Manual of Mental Disorders a GAF rating in this range is
> indicative of moderate symptoms in social or occupational functioning.

(R. 13).  Apparently because this discussion was the beginning of a paragraph analyzing

Plaintiff's mental impairments, and because the paragraph begins with the phrase "[w]ith

regard to the claimant's mental impairments...", Plaintiff assumes (too broadly) that the

GAF score mentioned is the factor primarily relied upon by the ALJ in assessing

Plaintiff's mental RFC limitations.  However, Plaintiff's view ignores the fact that before

reaching this point in the decision, the ALJ had already applied the Commissioner's

psychiatric review technique to assess the severity of Plaintiff's mental impairments at

step two and step three of the sequential evaluation process.  (R. 10-11).  Moreover, the

ALJ had previously noted Dr. McCleeary's opinion "that with training the claimant could perform repetitive tasks that would not require remembering complex instructions."  (R. 11) (citing Ex. 9F (R. 299-305)).

At the same time, Plaintiff's view is too narrow because she focused on the GAF score and failed to consider that the remainder of the ALJ's RFC discussion also affected his assessment of Plaintiff's mental limitations.  For example, Plaintiff's GAF argument does not recognize that the ALJ discussed Dr. McCleeary's report and explained that the ALJ had reduced Plaintiff's RFC "to allow for work which is repetitive and routine in nature and low stress, and does not require significant interaction with the general public or co-workers."  (R. 13).  Plaintiff's GAF argument does not recognize that the ALJ's discussion of Dr. Werder's treatment notes, of Plaintiff's credibility, of the state agency medical consultants' opinions, and of Dr. Werder's opinion each had an effect on the ALJ's assessment of Plaintiff's mental limitations.  (R. 13-15).

Finally, as the Commissioner suggests, the GAF scores cited in Plaintiff's Brief do not support her allegation of error, and in fact support the ALJ's finding that Plaintiff's mental impairments are not disabling.  Plaintiff cites to ten GAF scores assessed for Plaintiff in the medical evidence, ranging from 50 through 62.  (Pl. Br. 5).  Each of the GAF scores are contained in treatment records for Plaintiff from the Community Health Center of Southeast Kansas between May 3, 2007 and March 28, 2008.  (R. 271-97).  With one notable exception, the GAF scores were assigned by Plaintiff's therapist, a Licensed Specialist Clinical Social Worker (LSCSW), Pamela Anderson.  Id.  The one

exception was a GAF of 50 assigned by Dr. McCleeary in a report of a Psychological Evaluation on May 17, 2007.  (R. 275-78).

The evidence reveals that before she began treatment at the Community Health Center Plaintiff's children were placed in state custody, and Plaintiff had been referred for counseling to assist with the return of her children to her custody.  (R. 271-78).  Ms. Anderson performed an Intake Assessment on May 3, 2007, assessed a GAF score of 50, and requested that Plaintiff schedule a psychological evaluation.  (R. 271-74).  Thereafter, Dr. McCleeary performed a Psychological Evaluation of Plaintiff on May 17, 2007 including a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and a Millon Clinical Multiaxial Inventory-III, diagnosed Plaintiff with Anxiety Disorder NOS, and Depressive Disorder NOS, and assessed a GAF score of 50.  (R. 275-78).  A progress note dated June 12, 2007 reveals that Plaintiff was participating in counseling "under the duress of State authorities," but that she was making some progress, and would proceed with counseling, with the expectation that she would reschedule with Ms. Anderson "in approximately two weeks."  (R. 279-80).  There is an unexplained gap in treatment, with the next record dated October 17, 2007, and treatment proceeded every two to four weeks thereafter until March 28, 2008.  (R. 281-97).  At that point, Plaintiff expected custody of her children to be restored the next month, and the record reveals she had completed her therapy and was not scheduled to return.  (R. 296-97).  During this course of treatment Plaintiff was assessed a GAF score at each therapy session as follows:  October 17--55,

16

November 1--55, November 27--55, December 12--55, January 16, 2008--62, January 30-
-62, February 18--55, March 10--55, and March 28--59.  (R. 281-97).

This evidence reveals that Plaintiff was assessed with "serious" limitations in
functioning at her intake assessment and psychological evaluation, but that when she
began participating in six months of therapy over the next ten to eleven months her
functioning improved to "moderate" with occasional excursion into "mild" limitations.
Moreover, Plaintiff's condition improved, she completed her therapy, and her children
were returned to her custody.  Although the Commissioner has not endorsed GAF scores
for use in disability programs, the evidence to which Plaintiff cites supports the ALJ's
finding that Plaintiff's mental impairments were not disabling after November 7, 2007.

Plaintiff notes that no GAF scores were assessed for Plaintiff after March 2008 and
before the ALJ hearing.  Thereby, she implies that her mental functioning may have
deteriorated during the interim.  However, it is Plaintiff's burden to provide evidence of
disability, and she points to no record evidence that her mental functioning deteriorated
after she completed therapy with Ms. Anderson.  The ALJ's reference to the GAF score
of 55 assigned by Dr. McCleary in April 2008 is not error.

**B.      RFC Permitting Work that Is Routine and Low-Stress in Nature**

Plaintiff quotes Social Security Ruling (SSR) 85-15 for the proposition that
response to work stress is highly individualized and that a mentally impaired individual
may have difficulty meeting the requirements of even "low stress" jobs, and for the
requirement that "Any impairment-related limitations created by an individual's response

to demands of work . . . **must** be reflected in the RFC assessment." (Pl. Br. 6-7) (quoting SSR 85-15) (bold added by Plaintiff). Plaintiff also cites a 1998 Report and Recommendation by Magistrate Judge Reid of this district for the proposition that there is no factual basis for a presumption that unskilled work is non-stressful. Id. at 7 (citing Walker v. Apfel, No. 97-1189-MLB, 1998 WL 928672, at *4-5 (D. Kan., Sept. 18, 1998)). Plaintiff then notes that Dr. McCleeary indicated that the results of the MMPI-2 test administered to Plaintiff suggest that "[i]t is likely that [Plaintiff] might tend to have some periods of when she becomes highly angry **when stressed**." Id. at 7 (quoting (R. 277) (bold added by Plaintiff)). Based upon these facts, Plaintiff argues that "the ALJ failed to assess plaintiff's stress on an individualized basis as required by SSR 85-15," that the ALJ did not indicate what particular stressors Plaintiff must avoid, and that as a consequence one must assume Plaintiff must avoid all stress, which would preclude work. Id. The Commissioner argues that the ALJ did not presume that unskilled work is non-stressful, but found that Plaintiff is able to perform work that is "low stress in nature" and requires no significant interaction with the general public and co-workers. (Comm'r Br. 16). The Commissioner argues that the hypothetical question presented to the vocational expert was, therefore, proper. Id.

The court agrees that the ALJ did not presume all unskilled work is non-stressful. As Plaintiff argues, this district has long recognized that there is no factual basis for a presumption that unskilled work is non-stressful. Walker, 1998 WL 928672 at *4-5. However, Walker is not applicable here. In Walker, the ALJ recognized a medical

source's comment that the claimant would fly off the handle when under pressure, and had difficulty thinking and difficulty concentrating when under stress.  Id.  The ALJ stated that  "[s]uch limitations are accommodated by limiting the claimant to performing unskilled work, which by its nature is low stress work."  Id.  The court recognized that the ALJ's statement "that unskilled work is low stress work is questionable and has no basis in fact."  Id.  The court then found that there was no record evidence to support the ALJ's position that the particular unskilled jobs suggested in that case were by their nature low stress jobs.  Id.

The facts of Walker are not present here.  Here, the ALJ did not equate unskilled work with low stress work.  Rather, he assessed Plaintiff with the mental ability to perform "unskilled work that is repetitive, routine, and low stress in nature.  Further, the claimant is limited to work that does not require significant interaction with the general public or co-workers."  (R. 12).  Moreover, in the hypothetical provided to the vocational expert, the ALJ stated that the hypothetical individual was "able to understand, remember, and carry out simple instructions consistent with unskilled work that is repetitive, routine, and low stress in nature with no significant interaction with the general public or co-workers."  (R. 50-51).  If the ALJ were stating that all unskilled work is low stress in nature, the structure of the ALJ's statements would require the conclusion that the ALJ also found all unskilled work is repetitive in nature and all unskilled work is routine in nature.  Plaintiff does not even suggest that is the case.

19

Plaintiff suggests in her reply brief that "there is no such thing as a low stress job," and the ALJ should have considered that. (Reply 1). However, the ALJ's finding that there are low stress jobs available to Plaintiff was not based upon his own supposition, but he relied upon the vocational expert's testimony that there are jobs available in the economy to a hypothetical individual with the RFC assessed for Plaintiff, including work which is low stress in nature. (R. 50-52). This is record evidence supporting the ALJ's finding. Moreover, Plaintiff points to no evidence establishing that there is no such thing as a low stress job. SSR 85-15, upon which Plaintiff relies, does not establish that there are no low stress jobs. Rather that Ruling requires that "impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." As discussed herein, that is precisely what the ALJ did.

Moreover, Plaintiff's arguments that "the ALJ failed to assess plaintiff's stress on an individualized basis as required by SSR 85-15," and that the ALJ did not indicate what particular stressors Plaintiff must avoid, must also fail. There is much in the decision relating to the ALJ's individualized consideration of Plaintiff's stress and stressors. By way of example, in applying the psychiatric review technique at steps two and three of the sequential evaluation process, the ALJ considered Plaintiff's difficulties in social functioning and noted that Plaintiff was able to attend classes and successfully complete CNA/CMA certification despite her reported discomfort in group settings. (R. 11). The ALJ noted Plaintiff's testimony that "she has difficulties concentrating and getting along with others." (R. 12). The ALJ recognized Plaintiff's testimony of anxiety attacks,

getting nervous and dropping things, not liking to be around people, and not getting along well with family.  (R. 13).  Finally, the court notes that the ALJ explained that he had reduced the RFC assessed to allow only work which is "low stress, and does not require significant interaction with the general public or co-workers."  (R. 13).

### C.   **Narrative Discussion**

In her final argument, Plaintiff claims the ALJ failed to provide a narrative discussion regarding his assessment of her need for work which is low stress and does not require significant interaction with others.  Specifically, Plaintiff argues that the ALJ summarized the evidence but failed to relate it to his conclusions, and that although the ALJ stated that he provided an RFC which is more limiting than that provided by the state agency medical consultants, he did not explain where in the record he "gathered the limitation to non-stressful work without significant interaction with others."  (Pl. Br. 8).

The Commissioner responded:

> The ALJ's entire decision is a narrative statement detailing the weight given to the evidence, and, in this case, the RFC finding is consistent with the narrative discussion in the decision (Tr. 12-15).  Further, the ALJ linked each element of RFC finding to Plaintiff's reported symptoms, including anxiety in social situations and back pain (Tr. 12-15).  The ALJ thoroughly considered the medical evidence, including the medical opinion evidence from Plaintiff's treating providers (Tr. 12-15).  The ALJ took all credible medical evidence into account and stated sound reasons for discounting any medical evidence that was not supported by the record (Tr. 12-15).  Accordingly, the RFC assessment should be affirmed.

(Comm'r Br. 15).

21

As Plaintiff suggests, SSR 96-8p includes narrative discussion requirements for the RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings 143, 149 (Supp. 2011).  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  And, it must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities.  Id. at 149-50.

As the Commissioner argues, and as the court's discussion above confirms, the decision at issue provides a more-than-adequate narrative discussion.  The court will not repeat its analysis here.  However, with regard to the limitation to work which is low stress and does not require significant interaction with others, and as already noted several times, the ALJ explained that the RFC assessed "has been reduced to allow for work which is repetitive and routine in nature and low stress, and does not require significant interaction with the general public or co-workers."  (R. 13) (emphasis added).  As noted above, the ALJ discussed and summarized the relevant evidence and explained why he found the adjustment in RFC was necessary.  The ALJ's decision was based upon his weighing of the record evidence and is supported by substantial record evidence.  It is not for the court to reweigh the evidence and impose its judgment over that of the Commissioner.

22

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 20th  day of April 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**